UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

S-M-J, and J-M-L,

      Petitioners,

    v.

DREW BOSTOCK; TODD LYONS; KRISTI
NOEM; PAMELA BONDI; U.S.
IMMIGRATION AND CUSTOMS
ENFORCEMENT; and U.S. DEPARTMENT
OF HOMELAND SECURITY,

      Respondents.

Lead Case No. 6:25-cv-01425-MTK
Case No. 6:25-cv-01426-MTK

**OPINION & ORDER**

**KASUBHAI,** United States District Judge:

Before the Court are Petitioners S-M-J and J-M-L's Petitions for Writ of Habeas Corpus.
6:25-cv-01425-MTK, ECF No. 1 ("S-M-J Pet."); 6:25-cv-01426-MTK, ECF No. 1 ("J-M-L
Pet.")).[1] On August 22, 2025, the Court held oral argument and an evidentiary hearing on the
Petitions. For reasons below, the Petitions are granted.

---

[1] Petitioners' cases are consolidated. ECF No. 14.

# BACKGROUND

The Court finds the following facts to be true and without credible dispute. [2]

Petitioners J-M-L and S-M-J—who are father and son, respectively—are citizens of Guatemala. S-M-J Pet. ¶ 31; J-M-L Pet. ¶ 30. Petitioners entered the United States in March 2019, and immigration authorities detained but later released them into the United States. S-M-J Pet. ¶ 4; J-M-L Pet. ¶ 3; Evid. Hr'g and Oral Arg. Tr., August 22, 2025 ("Tr.") 39:14-23, ECF No 24. S-M-J was released under 8 U.S.C. § 1226(a), which applies to individuals awaiting removal proceedings. Resp'ts' Return and Resp. to Pet. ("Resp'ts Return") 8, ECF No. 11. Because J-M-L was subject to a prior removal order, he was released under 8 U.S.C. § 1231(a)(3). *Id.* at 7-8. Petitioners had a check-in with ICE later in 2019, at which time they were told "to not come anymore." Tr. 39:24-40:3.

Since their release, Petitioners have been living in the United States along with J-M-L's wife (S-M-J's mother) and another minor son. Tr. 56:25-57:1. Petitioners are indigenous Guatemalans, Petitioner S-M-J is disabled, and Petitioner J-M-L is a victim of war. Tr. 59:25-61:10. For these reasons, Petitioners fear returning to Guatemala. Tr. 59:27-19. All four family members have pending applications for asylum. Tr. 58:12-16.

Petitioners were ordered to report to the ICE office in Eugene, Oregon on August 12, 2025. S-M-J Pet. ¶ 37; J-M-L Pet. ¶ 37; Tr. 40:5-9. S-M-J testified that, during the check-in, he

---

[2] In general, the Court notes that the factual record before it is slim. Petitioners submitted no declarations in support of their Petitions, Respondents' only declarations are stricken as explained later in this opinion, and the relevant testimony elicited at the time set for evidentiary hearing was limited as to Petitioners and absent as to Respondents. The Court omits from its background discussion many of the allegations that lack evidentiary support and much of the testimony that is not relevant to the specific grounds on which this Court grants the Petitions or the relief it orders. The Court cites to non-evidentiary documents (the Petitions and briefing) only for facts that—based on the parties' respective filings and statements at oral argument—are undisputed.

asked to see his attorney—who was waiting outside the ICE offices—several times, but ICE agents did not allow his attorney access. Tr. 2:2-20. An ICE agent asked S-M-J three times to sign a document agreeing to voluntary deportation, continuing to deny S-M-J's requests to see his attorney, and "got mad" when S-M-J refused to sign the form. Tr. 43:2-44:6. The ICE agent told S-M-J that if he did not sign the form, ICE would separate S-M-J from his father and send S-M-J to jail. Tr. 44:7-19.

Respondents revoked both S-M-J and J-M-L's releases and detained them. S-M-J Pet. ¶ 37; J-M-L Pet. ¶ 37; Resp'ts' Return 8. With respect to S-M-J, Respondents' revocation was premised on their authority under 8 C.F.R. § 236.1. Resp'ts' Return 13. J-M-L's revocation was based on 8 C.F.R. § 241.4. Resp'ts' Return 12. On the same day Petitioners were detained, they were transferred to the ICE detention center in Tacoma, Washington. ECF No. 5.

## DISCUSSION

Under 28 U.S.C. § 2241(c)(3), federal courts have jurisdiction over petitions for writs of habeas corpus filed by persons "in custody in violation of the Constitution or laws or treaties of the United States." Petitioners here allege that Respondents' revocation of their release violates the Administrative Procedure Act (APA) and Petitioners' rights to procedural Due Process under the Fifth Amendment. Respondents contest the merits of the Petitions and also argue that the Court lacks jurisdiction over these matters. The Court begins by addressing Respondents' threshold jurisdictional challenges and, finding them unavailing, proceeds to address the merits of the Petitions.

## I. Jurisdiction

Respondents contend that this Court lacks jurisdiction to review both Petitions, each for distinct reasons based on their circumstances.

A.     **S-M-J's Petition**

Respondents argue that the Court lacks jurisdiction over S-M-J's Petition because S-M-J failed to exhaust administrative remedies. Specifically, Respondents argue the Ninth Circuit requires S-M-J to have first taken his challenge to an Immigration Judge and the Board of Immigration Appeals for a bond hearing. Resp'ts' Resp. 9 (citing *Leonardo v. Crawford*, 646 F.3d 1157, 1160-61 (9th Cir. 2011)).

But here, S-M-J had been transported to the Northwest Detention Center in Tacoma, Washington where, "[b]eginning around November 2022, the Tacoma Immigration Court started denying bond hearings for noncitizens 'who entered without inspection and who have since resided in the United States.'" *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1247 (W.D. Wash. 2025). [3] At oral argument, Respondents did not dispute this fact but argued that S-M-J was required to have sought and been denied a bond hearing to exhaust administrative remedies.

Despite Respondents' characterization of this argument, the exhaustion requirement for habeas review under 28 U.S.C. § 2241 is prudential, not jurisdictional. *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). Importantly, "[t]he prudential exhaustion requirement does not apply where it would be futile." *Castillo-Villagra v. I.N.S.*, 972 F.2d 1017, 1024 (9th Cir. 1992) (citing *El Rescate Legal Servs. v. EOIR*, 959 F.2d 742, 747 (9th Cir. 1992). Here, where Respondents do not contest that a bond hearing would certainly have been denied, the Court finds that resorting to that remedy would have been futile, and exhaustion was not

---

[3] Subsequent to the filing of this Petition, the Court in *Rodriguez* issued declaratory relief that "the Tacoma Immigration Court's practice of denying bond to Bond Denial Class members . . . violates the Immigration and Nationality Act." *Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *27 (W.D. Wash. Sept. 30, 2025). Regardless, at the time of Petitioners' detention in this case, bond hearings for Tacoma detainees were undisputedly not available. Thus, the subsequent development in that case has no bearing on exhaustion here.

required. *See Winnemucca Indian Colony v. United States ex rel. Dep't of the Interior*, 819 F. App'x 480, 482 (9th Cir. 2020) ("Exhaustion is futile where continuing administrative proceedings would clearly be of no avail, . . . where there is "certainty of an adverse decision," . . . or where there is "undisputed evidence of administrative bias"). Respondents' exhaustion argument therefore fails and this Court has jurisdiction over S-M-J's Petition.

   **B.     J-M-L's Petition**

   With respect to J-M-L, Respondents argue that because J-M-L is subject to a final order of removal, 8 U.S.C. § 1252(g) precludes this Court from exercising jurisdiction over J-M-L's Petition. That exclusive jurisdiction provision says: "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). The provision further specifies that exclusive jurisdiction exists "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision. . . ." *Id.* However, both the Supreme Court and the Ninth Circuit have made clear that section 1252(g)'s exclusive jurisdiction provision is "narrow," and applies only to the three discrete actions set forth in the statute: decisions to commence proceedings, to adjudicate cases, or to execute removal orders. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *Wong v. United States*, 373 F.3d 952, 964 (9th Cir. 2004).

   Here, J-M-L's Petition on its face does not implicate 8 U.S.C. § 1252(g) because it does not challenge Respondents' commencement of proceedings, adjudication of any case, or execution of a removal order. The Supreme Court recently made clear that "claims for relief [that] necessarily imply the invalidity of . . . confinement and removal . . . fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S.

670, 672 (2025); *see also Suri v. Trump*, 2025 WL 1806692, at *7 (4th Cir. July 1, 2025) ("§ 1252(g) simply doesn't extend to habeas challenges to present immigration confinement. . ."). Here, Petitioner alleges that the revocation of his release from custody—without following regulatory requirements as to formal process—violated the APA and J-M-L's Constitutional right to Due Process. J-M-L Pet. ¶¶ 42-53. J-M-L's Petition is clear that his challenges are "[r]egardless of [J-M-L's] removal order." J-M-L Pet. ¶ 47. These claims for relief, which are premised on statutory and regulatory provisions relating to *custody* decisions, squarely address the validity of J-M-L's revocation and resulting confinement, not his removal order. Accordingly, 8 U.S.C. § 1252(g) does not apply, and this Court has jurisdiction over J-M-L's Petition.

## II.    Merits

Petitioners each assert claims under the APA and the Due Process Clause. Before turning to the substance of the parties' merits arguments, the Court must address an evidentiary issue taken up at the hearing because it has bearing on the Court's decision.

### A.    Weiss Declarations

The sole evidence Respondents relied on in their Return of the Petitions was two declarations from ICE officer Jason Weiss, filed in response to S-M-J and J-M-L's Petitions, respectively. Weiss S-M-J Decl., ECF No. 12; Weiss J-M-L Decl., ECF No. 12. In those declarations, Officer Weiss vaguely asserts "personal knowledge as well as knowledge obtained from various records and systems maintained by ICE." Weiss S-M-J Decl. ¶ 2; Weiss S-M-J Decl. ¶ 3. Officer Weiss does not include as exhibits any of the records he relied on, nor does he identify what systems he referred to. Most relevant to the issues in this case, Officer Weiss did not include the notices of revocation issued to either Petitioner or indicate who signed those notices. The declarations are also rife with passive voice such that it is impossible for the Court

to discern who they refer to or how Officer Weiss had any personal knowledge of any of the conduct referenced.

At the hearing, Petitioners' counsel challenged Officer Weiss's declarations as inadmissible based on hearsay and lack of adequate foundation. Tr. 29:14-31:15. The Court construed Petitioners' arguments as a motion to strike the declarations. Tr. 31:17-32:6. The Court granted the motion to strike from the bench, finding that the declarations lack adequate foundation Tr. 34:17-21.

Accordingly, the Court does not consider either of Officer Weiss's declarations in deciding the Petitions. The Court now turns to the question of whether Petitioners have established the unlawfulness of their detention.

### B.    Count One: Violation of the APA

Under the APA, Courts must hold unlawful and set aside agency actions that are arbitrary and capricious or contrary to law. 5 U.S.C. § 706(2). Petitioners contend that Respondents violated the APA by failing to abide by regulations applicable to each Petitioner's circumstances. Specifically, they argue that the revocation decisions were not made by individuals with authority to make such decisions under the regulations, and that Respondents failed to make the requisite findings to permit such revocations.

With respect to Petitioner J-M-L, the parties do not dispute that his revocation is governed by 8 C.F.R. § 241.4(l)(2). J-M-L Pet. ¶ 28; Resp'ts' Resp. 12. That regulation provides:

> The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> (i) The purposes of release have been served;

(ii) The alien violates any condition of release;

(iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

(iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(l)(2). The regulation also provides that "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(2). Here, there is no evidence that J-M-L's revocation decision was made by any individual with authority to make such a decision or that J-M-L received notice explaining the reasons for the revocation.[4]  Accordingly, based on the record, Respondents' revocation of J-M-L's release was contrary to 8 C.F.R. § 241.4(l)(1)-(2) and therefore in violation of the APA.

As to S-M-J, the parties do not dispute that his revocation is governed by 8 C.F.R. § 236.1. Pet'rs' Mot. for T.R.O and Resp. to Resp'ts' Return 8, ECF No. 17; Resp'ts' Resp. 13. Like the regulation applicable to J-M-L, 8 C.F.R. § 236.1 limits the ability to make a revocation decision to particular individuals, in this case "the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign). 8 C.F.R. § 236.1(c)(9). Again, there is no evidence that S-M-J's release was revoked by anyone with authority to do so. Thus,

---

[4] Even if the Court did consider Officer Weiss's stricken declaration, it does not provide evidence on these points, either.

Respondents' revocation of S-M-J's release was contrary to 8 C.F.R. § 236.1(c)(9) and in violation of the APA.[5]

## C.    Count Two: Violation of Procedural Right to Due Process

Petitioners' second claim alleges that Respondents' actions violated their Constitutional rights to procedural Due Process by revoking their release without the required formal process and findings required by law. The Ninth Circuit has explained that analyzing a procedural Due Process claim involves a two-step inquiry. *United States v. Juvenile Male*, 670 F.3d 999, 1013 (9th Cir. 2012). "[T]he first [step] asks whether there exists a liberty or property interest which has been interfered with by the State; the second [step] examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.* (internal quotation marks and citations omitted). The second step is evaluated based on the test set forth in *Mathews v. Eldridge*, which instructs courts consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976); *Vasquez v. Rackauckas*, 734 F.3d 1025, 1044 (9th Cir. 2013) (explaining that the second step of the procedural Due Process inquiry is governed by the *Mathews v. Eldridge* framework).

Petitioners satisfy the first step here because "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of

---

[5] Because the Court finds the revocation unlawful based on the lack of authority to revoke, it does not reach the parties' dispute regarding the nature of the findings necessary to revoke release.

the liberty [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690. Additionally, the Due Process Clause applies to "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id*. at 693; *see also Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often on others.") (quotations omitted).

At the second step, the Court finds that the *Mathews* test is satisfied. On the first *Mathews* factor, Petitioners' private interest in freedom from imprisonment is strong for the reasons mentioned above: freedom from government custody is fundamental. The second two *Mathews* factors likewise favor Petitioners for the same reasons discussed with respect to the APA violations. Petitioner only asks for Respondents to follow the procedural safeguards already in place in applicable statutes and regulations. Revoking release without following the regulations carries a high risk of erroneous deprivation of liberty, and Respondents cannot argue that compliance with existing laws would be overly burdensome. Accordingly, the Court finds that Respondents violated Petitioners' Fifth Amendment rights to Due Process and finds in their favor on Count Two.

## III.  Remedy

The Court has "broad discretion" in crafting a remedy in habeas cases. *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013); s*ee also Harris v. Nelson*, 394 U.S. 286, 291 (1969) ("The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected."); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968) ("[the federal habeas corpus statute's] mandate is broad with respect to the relief that may be granted"). Here, the Court finds the following relief necessary in

light of the concerning facts Respondents' deprivation of Petitioners' access to counsel at the time of their detention, ICE agents coercive conduct towards S-M-J, and the unusually swift manner in which Respondents transferred Petitioners out of state (and away from their immigration attorney) in this case:

- Respondents shall not detain Petitioners again without complying with all applicable statutes and regulations.

- If Respondents detain Petitioners, Respondents shall not physically remove Petitioners from the District of Oregon unless they provide them with 21 days notice of their intent to do so.

- Respondents shall not restrict Petitioners' counsel from accompanying them to any future immigration matters, including ICE check-ins.

## CONCLUSION

The Court finds that the revocation of Petitioners' release from custody was unlawful based on both Petitioners' claims for relief. Petitioners' Petitions for Writ of Habeas Corpus (6:25-cv-01425-MTK, ECF No. 1; 6:25-cv-01426-MTK, ECF No. 1) are GRANTED. The pending Motions for Preliminary Injunction (6:25-cv-01425-MTK, ECF No. 26; 6:25-cv-01426-MTK, ECF No. 27) are DENIED AS MOOT.


DATED this 10th day of November 2025.


s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States District Judge